**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **PATRICK JOSEPH TERRY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0604-TCK-PJC** |
| | ) | |
| **CARL BEAR,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This matter is before the Court on the 28 U.S.C. § 2254 petition for writ of habeas corpus
(Dkt. 1) filed by Petitioner Patrick Joseph Terry, a state prisoner appearing pro se. Respondent
filed a response in opposition to the petition (Dkt. 11) and provided copies of the state court record
(Dkt. 12) necessary to adjudicate Petitioner's claims. Petitioner filed a reply brief (Dkt. 24) and
provided an Appendix that includes portions of the state court record (Dkts. 2, 3, 4).[2] On
consideration of these materials, and for the reasons that follow, the Court finds Petitioner is not
entitled to federal habeas relief and denies his habeas petition.

### *BACKGROUND*

Petitioner seeks federal habeas relief from the judgment and sentence entered against him

---

[1] Petitioner is currently incarcerated at the Joseph Harp Correctional Center (JHCC). Dkt.
44. The Court therefore substitutes the JHCC's warden, Carl Bear, in place of Jason Bryant as
party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District
Courts*. The Clerk of Court shall note this substitution on the record.

[2] For consistency, the Court's citations refer to the CM/ECF page number in the upper
right-hand corner of each document. References to documents in Petitioner's three-part Appendix
will be cited as Dkt. __, App'x vol. __, at __. References to the original appeal record will be cited
as Dkt. 12-6, O.R., at __. References to the original postconviction record will be cited as Dkt.
12-7, PC O.R., at __.

in the District Court of Ottawa County, Case No. CF-2012-242. Following review of the state

court record, the Court finds the following factual summary from the Oklahoma Court of Criminal

Appeals' decision in *Terry v. State*, 334 P.3d 953 (Okla. Crim. App. 2014), accurately and

adequately describes the events leading to Petitioner's convictions.[3]  Therefore, the Court adopts

the following summary as its own:

> In June 2012, the Ottawa County District Attorney's Office received a tip that [Petitioner], a parolee, was manufacturing methamphetamine in his apartment. As a condition of parole, [Petitioner] signed Rules and Conditions of Parole that stated in part: "I understand that at any time or place, I am subject to search. In addition, my vehicle and any property under my control is subject to search." Acting pursuant to [Petitioner's] parole agreement, a district attorney investigator accompanied by several police officers conducted a warrantless search of his apartment three weeks after receipt of the tip. Officers found in [Petitioner's] bedroom marijuana, baggies, small plastic containers containing methamphetamine residue, syringes, pills, a scale, a glass lid with white powder residue, a razor blade, and a plastic bag containing leftover "mush" from cooking methamphetamine. In the kitchen, police found lighter fluid and drain opener, chemicals commonly used to manufacture methamphetamine.
>
> A closet in [Petitioner's] apartment was secured by a combination padlock. [Petitioner] said the closet did not belong to him and claimed that the building's maintenance man used the closet to store tools. Police cut off the lock and found more lighter fluid, bottles containing two-layer liquids, a large container of lye, two jugs of muriatic acid, hoses, and several empty boxes of pseudoephedrine pills. In the refrigerator of an unoccupied apartment accessible from a door in [Petitioner's] kitchen, police found a bag containing five reaction vessels recently used for manufacturing methamphetamine.
>
> [Petitioner], who was outside when the officers arrived, objected to the search, but was reminded by the investigator that under the terms of his parole agreement his person and property were subject to search.

Dkt. 11-4, OCCA Op., at 2-3 (footnotes omitted).

On July 13, 2012, the State charged Petitioner, in the District Court of Ottawa County,

Case No. CF-2012-242, with two felonies—manufacturing a controlled dangerous substance

---

[3] The factual findings made by the Oklahoma Court of Criminal Appeals (OCCA) are also presumed correct absent "clear and convincing evidence" to rebut that presumption. 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted the presumption that these factual findings are correct.

(methamphetamine) within 2,000 feet of a school, in violation of OKLA. STAT. tit. 63, § 2-401(G) (Count 1), and possessing controlled dangerous substances (methamphetamine and marijuana) within 1,000 feet of a school, in violation of OKLA. STAT. tit. 63, § 2-402(C) (Count 2)—both after former conviction of two or more felonies. Dkt. 12-6, O.R., at 5. The State also charged Petitioner with misdemeanor possession of drug paraphernalia, in violation of OKLA. STAT. tit. 63, § 2-405 (Count 3). *Id.* In addition, the State alleged Petitioner had previously been convicted of ten felony offenses in six separate cases. *Id.* at 7-8. The State filed an amended information on May 31, 2013, omitting the allegation that Petitioner possessed drugs within 1,000 feet of a school and charging Petitioner in Count 2 with simple possession of controlled dangerous substances (methamphetamine and marijuana), after former conviction of two or more felonies. Dkt. 12-6, O.R., at 122-23.[4]

Petitioner waived his right to a jury trial and his case proceeded to a non-jury trial on June 10 and June 11, 2013. Dkt. 12-6, O.R., at 143, 147. Before and during trial, Petitioner moved to suppress evidence obtained during the search of his apartment. Dkt. 12-6, O.R., at 45, 52, 96, 141. The trial court denied Petitioner's motions and admitted the evidence at trial over Petitioner's objections. Dkt. 12-1, Tr. Prelim. Hr'g, at 71-93; Dkt. 12-2, Tr. Mot. Hr'g, at 2-9; Dkt. 12-3, Tr. Trial vol. 1, at 7-8. At the conclusion of the two-day trial, the trial court found Petitioner guilty as charged. Dkt. 12-4, Tr. Trial vol. 2, at 127-133.

After finding Petitioner had six prior felony convictions, the trial court honored the State's request to sentence him under the Habitual Offender Act, OKLA. STAT. tit. 21, § 51.1, and imposed a 30-year prison term and a $10,000 fine for the manufacturing conviction (Count 1), a six-year

---

[4] The State also amended Counts 1 and 2 to correct Petitioner's address. Dkt. 12-6, O.R., at 122-23.

prison term and a $1,000 fine for the drug possession conviction (Count 2), and a one-year jail term and $200 fine for the paraphernalia possession conviction (Count 3). Dkt. 12-4, Tr. Trial vol. 2, at 133-34; Dkt. 12-6, O.R., at 144-45. The court ordered the sentences to be served concurrently, with no credit for time served. Dkt. 12-4, Tr. Trial vol. 2, at 135, 137; Dkt. 12-6, O.R., at 144. Pursuant to OKLA. STAT. tit. 22, § 991a-21, the court imposed a one-year term of post-imprisonment supervision. Dkt. 12-4, Tr. Trial vol. 2, at 135; Dkt. 12-6, O.R., at 145.

Represented by counsel, Petitioner filed a direct appeal asserting one claim: that the warrantless search of his apartment violated his Fourth Amendment right to be free from unreasonable searches. Dkt. 11-1, Pet'r App. Br., at 10. In a published opinion filed September 18, 2014, in Case No. F-2013-607, the OCCA found no Fourth Amendment violation and affirmed Petitioner's convictions and sentences. Dkt. 11-4, OCCA Op., at 2, 10-11. Petitioner, represented by counsel, sought further direct review of his Fourth Amendment claim by filing a petition for writ of certiorari in the United States Supreme Court. Dkt. 2, App'x vol. 1, at 59-65; Dkt. 3, App'x vol. 2, at 1-16. The Supreme Court denied his petition. Dkt. 11-5, at 1.

Petitioner also sought postconviction relief in state court on two occasions. First, on September 26, 2014, Petitioner filed a pro se application for suspended sentence, alleging "the complaining officers perjured themselves at trial" when they testified about their pre-search contact with the local parole office. Dkt. 12-7, PC O.R., at 7-10. The state district court denied Petitioner's application on October 10, 2014. Dkt. 2, App'x vol. 1, at 57.

Second, on February 25, 2016, Petitioner filed a pro se application for postconviction relief, asserting seven propositions of error:

| | |
|---|---|
| Proposition One: | The State knowingly relied on perjured evidence at trial to obtain a conviction in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution |
| Proposition Two: | Ineffective assistance of appellate counsel, Sixth and |

|                       |                                                                                                                                                                                                                                              |
| --------------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                       | Fourteenth Amendments to the Constitution of the United States                                                                                                                                                                                |
| Proposition Three:    | The district court erred by imposing an unauthorized penalty of post-imprisonment supervision at sentencing when such law providing this penalty was not in effect at the time the crime was alleged to have been committed                    |
| Proposition Four:     | The district court erred and imposed an unauthorized fine enhancement on Petitioner at sentencing when such sentence was first enhanced as a habitual offender                                                                                 |
| Proposition Five:     | Because the State failed to prove all elements of the offense charged in Count I of the information, trial court erred in entering a finding of guilt for the crime of manufacturing a controlled dangerous substance (methamphetamine) within 2000 feet of a school—63 O.S. § 2-401(G) |
| Proposition Six:      | Petitioner was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution                                                                                          |
| Proposition Seven:    | Trial court erred in not permitting the Petitioner to confront the informant, who was not a confidential informant.                                                                                                                           |

Dkt. 3, App'x vol. 2, at 19, 27-28 (altered to omit full capitalization); Dkt. 4, App'x vol. 3, at 51

(altered to omit full capitalization).[5]  By order filed May 2, 2016, the state district court denied

Petitioner's application for postconviction relief.  Dkt. 11-7, DC Order, at 1.  With the exception

of the ineffective-assistance-of-appellate-counsel (IAAC) claim Petitioner asserted in Proposition

Two, the court found Petitioner's claims were procedurally barred.[6]  *Id.* at 2 & n.1.  Applying

*Strickland v. Washington*, 466 U.S. 668 (1984), and *Logan v. State*, 293 P.3d 969 (Okla. Crim.

---

[5] Petitioner asserted the first six propositions in his original application for postconviction relief and added the seventh proposition in a supplemental application.  *See* Dkt. 11-7, DC Order, at 1-2.

[6] The state district court identified the procedurally-barred claims as Propositions One, Two, Three, Four, Five and Seven.  Dkt. 11-7, DC Order, at 2.  However, it is clear from the order that the court addressed the merits of the IAAC claim asserted in Proposition Two.  *Id.* at 3-4.  It is not clear from the order whether the court inadvertently omitted Proposition Six from the list of procedurally-barred claims.  *Id.* at 2-4.  In any event, the court briefly addressed the claims asserted in Propositions Three, Six and Seven and, as an apparent alternative to the procedural bar, denied relief on the merits as to those claims.  *Id.* at 4.

App. 2013), the latter of which requires courts to examine "the merits of the issues that appellate counsel failed to raise," the court rejected the IAAC claim, finding appellate counsel was not ineffective for omitting the issues identified by Petitioner.[7] Dkt. 11-7, DC Order, at 3-4.

Petitioner filed a timely postconviction appeal. In his postconviction appellate brief, Petitioner reasserted his Proposition Two IAAC claim—which encompassed the claims raised in Propositions One, Four and Five—and, in addition, he alleged ineffective assistance of appellate counsel as cause to overcome the state district court's application of a procedural bar as to the claims asserted in Propositions One, Four, Five and Seven. Dkt. 11-8, Pet'r PC App. Br., at 9-10, 16-17, 19-20, 22-23.[8] In an unpublished order filed July 21, 2016, in Case No. PC-2016-0412, the OCCA affirmed the state district court's order denying postconviction relief. Dkt. 11-9, OCCA PC Order, at 1, 4. The OCCA found the claims asserted in Propositions One, Three, Four, Five, Six and Seven were procedurally barred, citing Petitioner's failure to raise those claims on direct appeal.[9] *Id.* at 2. As to the IAAC claim presented in Proposition Two, the OCCA determined that the state district court properly applied *Strickland* and *Logan* when it "looked to the merits of the

---

[7] The state district court characterized the IAAC claim as "effectively encompass[ing]" the substantive claims Petitioner asserted in Propositions One, Four and Five, found those three claims lacked merit, and thus rejected the IAAC claim. Dkt. 11-7, DC Order, at 3-4.

[8] Petitioner did not fault appellate counsel for failing to raise the claims asserted in Propositions Three and Six. *See id.* at 13 (discussing Proposition Three and attempting to overcome the procedural bar by asserting the imposition of post-imprisonment supervision was an obvious sentencing error in need of correction); *id.* at 20 (discussing Proposition Six and alleging state district court's analysis of his ineffective-assistance-of-trial-counsel claim was "inadequate" because state district court failed to enter findings of fact and conclusions of law).

[9] As previously noted, the state district court did not include Proposition Six, the ineffective-assistance-of-trial-counsel claim, in its list of procedurally-barred claims and, instead, briefly addressed that claim on the merits. Dkt. 11-7, DC Order, at 2-3. However, the OCCA explicitly applied a procedural bar as to Proposition Six when it stated, "Any allegations as to trial counsel's ineffectiveness have been waived." Dkt. 11-9, OCCA PC Order, at 2.

issues raised" and agreed with the state district court's conclusion "that appellate counsel's performance was not deficient." *Id.* at 4.

Petitioner filed the instant federal habeas petition on September 19, 2016. Dkt. 1.

## DISCUSSION

### I.    Legal Framework

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) guides this Court's review of a habeas petition filed by a state prisoner. Under the AEDPA, a federal court may grant habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, a federal court may not grant habeas relief to a state prisoner on the basis of a state-law error. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). Even when a state prisoner timely files a federal habeas petition and presents only properly exhausted federal claims,[10] the AEDPA limits a federal court's ability to grant habeas relief. The limitations vary depending on how the state court disposed of the federal claims.

If the state court adjudicated the merits of the prisoner's federal claim, a federal court may not grant habeas relief unless the prisoner demonstrates that the state court's adjudication of that

---

[10] The AEDPA provides that a federal court may not grant habeas relief to a state prisoner unless the State prisoner has exhausted available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). In addition, a state prisoner ordinarily must file the federal habeas petition within one year of the date on which his convictions became final. 28 U.S.C. § 2244(d)(1)(A). Respondent concedes, and the Court finds, that Petitioner exhausted available state remedies as to each of his claims and complied with the one-year statute of limitations. Dkt. 11, Response, at 2.

claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1),[11] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

If the state court denied the prisoner's federal claim on procedural grounds, the claim is procedurally defaulted for purposes of federal habeas review. *Id.* at 103. Ordinarily, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."[12] *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Nonetheless, a federal court may review a procedurally defaulted federal claim if the prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To demonstrate "cause," the prisoner must "show that some objective factor external to the

---

[11] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[12] A state procedural rule "is independent if it is separate and distinct from federal law," *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998), and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims,'" *id.* at 797 (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

defense impeded . . . efforts to comply with the State's procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In addition to "cause," the prisoner must also establish "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). To demonstrate that a "fundamental miscarriage of justice" will occur absent review of his defaulted claims, the prisoner must show that "a constitutional violation probably has caused the conviction of one innocent of a crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *see also Herrera v. Collins*, 506 U.S. 390, 404 (1993) (noting that the miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons" (quoting *McCleskey*, 499 U.S. at 490)).

## II.    Analysis

Petitioner seeks federal habeas relief on the same eight grounds he presented to the OCCA through his direct and postconviction appeals:

| | |
|---|---|
| Ground One: | Because the search of Petitioner's home was improper, the trial Court erred in denying defense Counsel's Motion [t]o Suppress. Question Presented: Does the Fourth Amendment of the United States Constitution allow a police officer to conduct a warrantless, nonconsensual investigatory search of a parolee's residence, absent reasonable suspicion, statutory authority, or direction from the parole officer? |
| Ground Two: | The State knowingly relied on perjured evidence at trial to obtain a conviction in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. |
| Ground Three: | Ineffective Assistance of Appellate Counsel, Sixth and Fourteenth Amendments to the United States Constitution. |
| Ground Four: | The District Court erred by imposing an unauthorized penalty of post-incarceration supervision at sentencing when such law providing this penalty was not in effect at the time the crime was alleged to have been committed. |
| Ground Five: | The District Court erred and imposed an unauthorized fine enhancement on Petitioner at sentencing when such sentence was first enhanced as a Habitual Offender. |
| Ground Six: | Because the State failed to prove all elements of the offense |

|                | charged on Count 1 of the Information, Trial Court erred in entering a finding of guilt for the crime of Manufacturing a Controlled Dangerous Substance (Methamphetamine) within 2000 Feet of a School—63 O.S. § 2-401(G). |
|----------------|--------------------------------------------------------------------------------------------------------------------------------------|
| Ground Seven:  | Petitioner was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution |
| Ground Eight:  | Trial Court erred by not permitting the Petitioner to confront the informant, who was not a confidential informant. |

Dkt. 1, Petition, at 6-19.

Respondent contends *Stone v. Powell*, 428 U.S. 465 (1976), bars habeas relief on the Fourth Amendment claim asserted in Ground One. Dkt. 11, at 10-13. Respondent contends Petitioner procedurally defaulted the claims raised in Grounds Two, Four, Five, Six, Seven and Eight by failing to raise those claims on direct appeal. *Id.* at 13-17. Respondent urges this Court to overlook the procedural default and analyze each claim on the merits under the doubly deferential standards of 28 U.S.C. § 2254(d) and *Strickland*. *Id.* at 17-23. Respondent contends § 2254(d) bars habeas relief on these claims, as well as the IAAC claim asserted in Ground Three, because the OCCA's application of *Strickland* was objectively reasonable. *Id.* at 13, 16-18, 24-40.

A.    **Claims adjudicated on the merits**

1.    **Fourth Amendment Claim (Ground One)**

Petitioner claims he is entitled to federal habeas relief because the Fourth Amendment does not "allow a police officer to conduct a warrantless, nonconsensual investigatory search of a parolee's residence, absent reasonable suspicion, statutory authority, or direction from the parole officer." Dkt. 1, Petition, at 6-7; Dkt. 24, Reply, at 77-92.

Petitioner presented this claim to the OCCA on direct appeal, and the OCCA rejected it. The OCCA framed the issue before it as "whether the warrantless, investigative search of a parolee's home by law enforcement acting on an unidentified informant's tip violated his Fourth

Amendment rights." Dkt. 11-4, OCCA Op., at 2. The OCCA discussed a trilogy of United States Supreme Court cases, *Samson v. California*, 547 U.S. 843 (2006); *United States v. Knights*, 534 U.S. 112 (2001); and *Griffin v. Wisconsin*, 483 U.S. 868 (1987), and, applying *Samson*, found the search of Petitioner's apartment did not violate the Fourth Amendment "[b]ecause the search was in compliance with [Petitioner's] parole agreement." Dkt. 11-4, OCCA Op., at 5-10. The OCCA specifically found that the signed parole agreement contained a "search condition" that "did not limit searches of [Petitioner] to supervisory searches conducted by his parole officer" and that, instead, "unconditionally allowed searches without limitation concerning who may conduct the search, the purpose of the search (investigatory or supervisory), time, place, and the necessity of a search warrant or cause." Dkt. 11-4, OCCA Op., at 10. The OCCA ultimately concluded (1) that Petitioner, as a parolee, had a diminished expectation of privacy, and (2) that the search of his apartment was reasonable because it "was in compliance with [his] parole agreement" under which Petitioner agreed to be "subject to search at any place or time" without "a search warrant or cause." *Id.* at 8-10.

### a. *Stone* bars habeas relief

Respondent contends *Stone v. Powell*, 428 U.S. 465 (1976), bars habeas relief on Ground One because Petitioner fully and fairly litigated his Fourth Amendment claim in state court. Dkt. 11, at 10-13. In his reply brief, Petitioner asserts that *Stone* does not apply because his conviction rests on perjured testimony and he "was deprived of a fair trial with reliable results when he was not allowed to confront the witnesses against him at trial." Dkt. 24, Reply Br., at 67, 69-70.[13]

The Court agrees with Respondent that *Stone* bars habeas relief. In *Stone*, the Supreme

---

[13] Petitioner's arguments on this point are not entirely clear. However, as further discussed below, these arguments appear to implicate the claims he asserts in Grounds Two (perjury claim) and Eight (confrontation claim).

Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Brown v. Sirmons*, 510 F.3d 1072, 1082-83 (10th Cir. 2008) (quoting *Stone*, 428 U.S. at 494); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming district court's application of *Stone* to bar habeas relief when petitioner filed a suppression motion, "repeatedly objected to the admission" of allegedly tainted evidence at trial, and raised Fourth Amendment claim on direct appeal, and when "state courts thoughtfully considered the facts underlying petitioner's Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent"). As Respondent contends, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. The record reflects that Petitioner moved to suppress the evidence obtained during the search of his apartment by filing suppression motions both before and during trial. Dkt. 12-6, O.R., at 45, 52, 96, 141. The trial court (1) considered Petitioner's Fourth Amendment arguments at the preliminary hearing and denied relief, (2) reconsidered those arguments during a pretrial motion hearing and denied relief, (3) reaffirmed its ruling that the search was reasonable on the first day of trial, and (4) admitted evidence obtained during the search at trial, over Petitioner's repeated objections. Dkt. 12-1, Tr. Prelim. Hr'g, at 71-93; Dkt. 12-2, Tr. Mot. Hr'g, at 2-9; Dkt. 12-3, Tr. Trial vol. 1, at 7-8. Petitioner also presented his Fourth Amendment claim to the OCCA on direct appeal, and the OCCA thoroughly considered his claim in a published opinion. Dkt. 11-4, OCCA Op., at 4-10.

On this record, there is no merit to Petitioner's assertion that "it is evident that [he] was prevented from having the opportunity to "fully and fairly" litigate his Fourth Amendment claim." Dkt. 24, Reply Br., at 15. Thus, *Stone* bars habeas relief on Ground One.

### b.     Section 2254(d) bars relief

Alternatively, even under Petitioner's view that *Stone* does not apply, 28 U.S.C. § 2254(d) bars habeas relief.  Petitioner makes two arguments in his attempt to show that he can overcome § 2254(d)'s bar.  Neither is persuasive.  First, relying on § 2254(d)(2), Petitioner argues that the OCCA's decision as to his Fourth Amendment claim rests on an unreasonable determination of the facts.  Dkt. 24, Reply Br., at 70-73.  He contends that the OCCA misconstrued the record when it stated "the record shows that, upon his release from prison, (Petitioner) signed Rules and Conditions of parole." *Id.* at 70 (quoting *Terry*, 334 P.3d at 957).  Petitioner argues the OCCA's statement is "contrary to the evidence" presented in state district court which shows that he signed his parole agreement in October 2002, he was granted parole in December 2002, and he was not actually released from prison until 2009. *Id.* at 71-73 & n. 37 (citing portions of transcripts from preliminary hearing and trial).  Thus, he argues, the OCCA's determination that he had a diminished expectation of privacy based on the parole agreement constitutes an unreasonable determination of the facts that renders its rejection of his Fourth Amendment claim unreasonable. The Court disagrees.  "A state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (alterations in original) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1170-72 (10th Cir. 2011)).  Even assuming the OCCA either misstated or misapprehended the facts regarding when Petitioner signed his parole agreement relative to his actual release date, the OCCA clearly understood that Petitioner signed the agreement and, at the time of the apartment search, Petitioner was subject to the conditions of the agreement.  And, contrary to Petitioner's position, the date he signed the parole agreement was not material to the

OCCA's ultimate determination that the search was reasonable. The OCCA concluded the search was reasonable because Petitioner's parole agreement included a "search condition" that "unconditionally allowed searches without limitation concerning who may conduct the search, the purpose of the search (investigatory or supervisory), time, place, and the necessity of a search warrant or cause." Dkt. 11-4, OCCA Op., at 10. Consequently, the OCCA's alleged misapprehension does not relate to a material factual issue and does not undermine the reasonableness of the OCCA's decision that the search did not violate the Fourth Amendment. Thus, Petitioner cannot overcome the bar imposed by § 2254(d)(2).

Second, under § 2254(d)(1), Petitioner argues the OCCA "failed to apply the appropriate Supreme Court precedent." Dkt. 24, Reply Br., at 74-76. As previously discussed, in analyzing Petitioner's Fourth Amendment claim, the OCCA primarily relied on *Samson v. California*, 547 U.S. 843 (2006). Dkt. 11-4, OCCA Op, at 5-10; *see also id.*, at 12-13 (Lumpkin, J., specially concurring) (identifying *Samson* as the Supreme Court case governing searches of parolees, explaining that the Supreme Court determined in *Samson*, "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee subject to a valid search condition of his parole"). Contrary to Petitioner's argument, *Samson* states the governing legal principle. As the OCCA stated, "[i]n *Samson*, the [Supreme] Court answered the question left open by *Knights*, namely 'whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment.'" Dkt. 11-4, OCCA Op., at 7 (quoting *Samson*, 547 U.S. at 847). That was the same question Petitioner presented to the OCCA on direct appeal. Thus, it is clear that the OCCA identified "the correct governing legal principle' in existence at the time." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). As a result, the only

question before this Court is whether the OCCA's application of *Samson* was objectively reasonable. *White v. Woodall*, 572 U.S. 415, 419 (2014). On the record presented, the Court finds nothing objectively unreasonable about the OCCA's application of *Samson* to the facts of this case. As Judge Lumpkin explained in his concurring opinion, *Samson* held "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee subject to a valid search condition of his parole." Dkt. 11-4, OCCA Op., at 13; *Samson*, 547 U.S. at 856. In applying *Samson*, the OCCA found that Petitioner, at the time of the challenged search, was a parolee subject to a valid search condition of his parole agreement providing that "at any time or place" both his person and "any property under [his] control" would be subject to search with or without cause. Dkt. 11-4, OCCA Op., at 10. Under these circumstances, Petitioner fails to demonstrate that the OCCA's decision as to his Fourth Amendment claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, § 2254(d)(1) also bars habeas relief.

### c. Conclusion

In sum, Petitioner is not entitled to federal habeas relief on Ground One for two reasons. First, *Stone* precludes habeas relief because the record shows Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. *Stone*, 428 U.S. at 494. Second, even assuming *Stone* does not apply, § 2254(d) bars habeas relief because the OCCA reasonably determined the material facts in light of the state court record and the OCCA applied *Samson* in an objectively reasonable manner when it rejected Petitioner's Fourth Amendment claim. For these reasons, the Court denies habeas relief on Ground One.

## 2. Ineffective Assistance of Appellate Counsel Claim (Ground Three)

Petitioner alleges he was denied his Sixth Amendment right to the effective assistance of counsel because appellate counsel failed to raise four claims on direct appeal: (1) the perjury claim he identifies in Ground Two, (2) the unauthorized-fine claim he identifies in Ground Five, (3) the sufficiency-of-the-evidence claim he identifies in Ground Six, and (4) the confrontation claim he identifies in Ground Eight.[14]  Dkt. 1, Petition, at 10-11; Dkt. 24, Reply Br., at 16-23, 45-47, 49-51, 59-61, 93-94.

Petitioner presented his IAAC claim to the OCCA on postconviction appeal, and the OCCA rejected it on the merits.  The OCCA determined that the state district court properly applied *Strickland* and *Logan* when that court "looked to the merits of the issues raised" and the OCCA agreed with the court's conclusion "that appellate counsel's performance was not deficient." *Id.* at 4. [15]

Respondent contends § 2254(d) bars habeas relief on Ground Three because the OCCA's

---

[14] Liberally construing Petitioner's pleadings, these appear to be the same four issues he identified in the IAAC claim he presented in state court.  *See* Dkt. 3, App'x vol. 2, at 48-56 (application for postconviction relief identifying first three claims as erroneously omitted); Dkt. 11-7, DC Order, at 3-4 (state district court order considering merits of first three claims in rejecting IAAC claim); Dkt. 11-8, Pet'r PC App. Br., at 9, 16-17, 19-20, 22-23 (postconviction appeal brief identifying all four claims).

[15] As previously discussed, the state district court understood the IAAC claim as alleging appellate counsel was ineffective for failing to raise only the first three claims.  Dkt. 11-7, DC Order, at 3-4.  Though not entirely clear from the OCCA's order, it appears the OCCA may have construed the IAAC claim in the same manner.  *See* Dkt. 11-9, OCCA Order, at 4 ("Judge Haney looked to the merits of the issues raised and concluded that appellate counsel's performance was not deficient.  We agree.").  Nonetheless, in his postconviction appellate brief, Petitioner argued appellate counsel's ineffectiveness should excuse the procedural default of the fourth claim.  Dkt. 11-8, Pet'r PC App. Br., at 20-23.  The Court thus finds that the OCCA effectively adjudicated the merits of Petitioner's Ground Three IAAC claim as to all four claims.  *See Smith v. Duckworth*, 824 F.3d 1233, 1242 n.6 (10th Cir. 2016) (explaining that the OCCA's analysis of appellate counsel's ineffectiveness, whether counsel's performance is challenged as an independent claim or alleged as to excuse a procedural default of a different claim, is entitled to AEDPA deference).

application of *Strickland* is objectively reasonable.  Dkt. 11, Response, at 18-24, 40.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  U.S. Const. amend VI.  To establish a violation of that right, a criminal defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  The *Strickland* test applies to claims alleging ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  When a defendant alleges appellate counsel failed to raise an issue on direct appeal, the reviewing court must "first examine[s] the merits of the omitted issue."  *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).  "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance."  *Id*. (citing *Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998)).  If the issue has merit, the reviewing court must then determine whether counsel's failure to raise it "was deficient and prejudicial" under *Strickland*.  *Id*.  The *Strickland* standard is deferential, and "[e]very effort must be made to evaluate the conduct from counsel's perspective at the time."  *Littlejohn v. Trammell*, 704 F.3d 817, 859 (10th Cir. 2013).

Because the OCCA correctly identified *Strickland* as the clearly established federal law governing Petitioner's IAAC claim, the sole question for this Court under § 2254(d)(1) is whether the OCCA unreasonably applied *Strickland*.  *See Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").  Section 2254(d) requires this Court to consider appellate counsel's performance with double deference.  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review . . . applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard.").  Thus, to obtain habeas relief, Petitioner must show that the OCCA's rejection of his Ground Three IAAC

claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### a.  Perjury Claim (Ground Two)

Petitioner claims the State knowingly relied on perjured testimony from law enforcement officers to obtain his conviction. Dkt. 1, Petition, at 8-9; Dkt. 24, Reply Br., at 23-40. In support of this claim, Petitioner alleges Detective Chris Morris lied, at the preliminary hearing and at trial, when he testified (1) "that, based on a tip from an unidentified informant, he called the local office of the Oklahoma Department of Corrections (ODOC) Probation and Parole to determine if the Petitioner was on parole," and (2) "that he physically went to the Miami, Oklahoma, Parole Office to pick up a copy of Petitioner's [parole agreement] and spoke to ODOC Parole Officers Shane Barnes and Stormy Cochran" sometime between June 20, 2012, and July 12, 2012, before conducting the search of Petitioner's apartment. Dkt. 1, Petition, at 8-9; Dkt. 24, Reply Br., at 23-30. Petitioner further alleges the prosecutor's actions before and during trial demonstrate that the prosecutor knew, and tried to cover up, the allegedly false testimony. Dkt. 24, Reply Br., at 32-37.

> Applying *Strickland*, the state district court reasoned,
>
> A review of the trial transcript shows that at some point a copy of Petitioner's parole rules and conditions was obtained by law enforcement and law enforcement thereafter searched Petitioner's apartment, an apartment next to Petitioner's, and a locked closet located within Petitioner's apartment. The alleged perjured testimony Petitioner complains of addresses nothing more than the time frames involving the rules and conditions being obtained and at what point the parole officer became aware of the Petitioner's arrest. This issue [is] not material and does not impact the admissibility of any evidence seized and thus no prejudice can be shown by appellate counsel's failure to raise this issue.

Dkt. 11-7, DC Order, at 3. The OCCA apparently agreed with the state district court that the

allegedly false testimony was "not material." Dkt. 11-7, DC Order, at 3.[16]

Petitioner's complaint that the State relied on perjured testimony implicates his constitutional right to due process. A due process violation occurs when the State obtains a conviction "through the use of false evidence, known to be [false] by representatives of the State" regardless of whether the State either solicits the false evidence or simply "allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a *Napue* violation, the petitioner must show that "(1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material." *United States v. Garcia*, 793 F.3d 1194, 1207 (10th Cir. 2015). The first two showings necessary to establish a *Napue* violation require a reviewing court to make factual findings. *Id.* The third showing requires the reviewing court to apply a harmless-error test; specifically, "[t]he false testimony is material 'unless failure to disclose [the perjury] would be harmless beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 (1985)).

The OCCA reasonably determined that this claim lacked merit because Petitioner's perjury claim fails at the third prong of the *Napue* analysis.[17] Even accepting as true Petitioner's

---

[16] Because the OCCA adopted the state district court's reasoning without elaboration, the Court finds it appropriate to "look through" the OCCA's decision to the state district court's rationale as to this and other claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that when the relevant state court decision fails to identify reasons for its decision on the merits, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale").

[17] Notably, the OCCA's failure to cite *Napue*, or any other Supreme Court precedent, does not preclude review under § 2254(d). *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Early v. Packer*, 537 U.S. 3, 8 (2002) (explaining that a state court need not mention or even demonstrate "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them").

"evidence" that Detective Morris lied about the time frame in which he obtained Petitioner's parole agreement, *see* Dkt. 1, Petition, at 8-9; Dkt. 24, Reply Br., at 24-30, and further accepting as true Petitioner's speculation about the prosecutor's knowledge of the alleged perjury, *see* Dkt. 24, Reply Br., at 34-37, Petitioner fails to establish that Morris's allegedly false testimony was material.

Petitioner argues the allegedly false testimony was material because it undermines the trial court's determination that the officers developed "reasonable suspicion" for the search through (1) the unidentified informant's tip and (2) through the officers' pre-search contact with parole officers. *See* Dkt. 24, Reply Br., at 14-15 ("Mr. Terry argues there was no 'unidentified informant' and that the entire rationale behind the 'reasonable suspicion, which trial Court found to be 'reasonable' under its Fourth Amendment analysis of the warrantless search, was predicated on a lie professed by the police."). However, regardless of whether the *trial court* found (or thought it had to find) that the search was supported by reasonable suspicion, the OCCA upheld the search on the basis that no level of suspicion was required in light of Petitioner's parole agreement. Dkt. 11-4, OCCA Op., at 10. The OCCA found Petitioner's parole agreement subjected him to searches of his person and any property under his control "without limitation concerning who may conduct the search, the purpose of search (investigatory or supervisory), time, place, and the necessity of a search warrant or cause." *Id.* Consequently, as the state district court reasoned, because "[t]he alleged perjured testimony Petitioner complains of addresses nothing more than the time frames involving the rules and conditions being obtained and at what point the parole officer became aware of the Petitioner's arrest," the allegedly false testimony is "not material." Dkt. 11-7, DC Order, at 3.

Based on the foregoing, it was objectively reasonable for the OCCA to determine that the

perjury claim lacked merit and therefore did not support Petitioner's IAAC claim.

### b.    Unauthorized Fine Claim (Ground Five)

Next, Petitioner alleges the trial court "imposed an unauthorized fine enhancement" under Oklahoma's Uniform Controlled Dangerous Substances Act, OKLA. STAT. tit. 64, as to Counts 1 and 2 because those sentences were already enhanced under Oklahoma's Habitual Offender Act, OKLA. STAT. tit. 21, § 51.1. Dkt. 1, Petition, at 14-15. Relying on state law, Petitioner argues "[i]t is a well settled rule of law that if two (2) enhancement statutes are applicable, then punishment can only be assessed and fall within the limits of one statute; combining both statutes to fashion a punishment is impermissible." *Id.* at 15.[18] However, Petitioner also contends the alleged sentencing error violated his Fifth Amendment right to be free from multiple punishments for the same crime, his Eighth Amendment right to be free from excessive fines, and his Fourteenth Amendment rights to due process and equal protection. *Id.*; Dkt. 24, Reply Br., at 45-48.

Addressing this claim under *Strickland*, the state district court found it lacked merit. Dkt. 11-7, DC Order, at 3. The court stated,

> Petitioner, in Count 1, was charged with Manufacturing CDS within 2000 feet of a school under 63 O.S. § 2-401(G) which is not an enhanced charge. The penalty for that charge was then enhanced with a second page alleging eight after former convictions under 21 O.S. § 51.1. This habitual offender enhancement is permitted when a defendant has prior convictions which are for crimes other than those contained in the Uniform Controlled Dangerous Substance Act in Title 63. The

---

[18] To the extent Petitioner argues the OCCA either misinterpreted or misapplied state law in determining that his alleged sentencing error lacked merit, the Court agrees with Respondent that Petitioner fails to state a cognizable habeas claim. Dkt. 11, Response, at 29, n.20; *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Schulze v. Addison*, 494 F. App'x 922, 926 (10th Cir. 2012) (unpublished) (rejecting habeas petitioner's claim that trial court improperly applied two state statutes to enhance criminal sentence and agreeing with federal district court's reasoning that "the proper interpretation of these two Oklahoma statutes is the responsibility of the Oklahoma state courts and is not cognizable on habeas review").

Petitioner was sentenced within the proscribed sentence range for his crimes, including the fines imposed.

Dkt. 11-7, DC Order, at 3 (footnotes omitted). The OCCA agreed that the unauthorized-fine claim lacked merit and thus did not support Petitioner's IAAC claim. Dkt. 11-9, OCCA Order, at 4. Neither state court explicitly addressed the federal component of Petitioner's claim, but this Court presumes that the OCCA found that the federal claim likewise lacked merit. *See Johnson v. Tara Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.").

Applying this presumption, the Court finds that it would have been reasonable for the OCCA to decide that the Ground Five claim lacked merit and did not support the IAAC claim. Notably, federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). For the reasons explained by the state district court, Petitioner cannot show that his sentences or fines fall outside the statutory limits or are otherwise unauthorized by law. Petitioner was convicted of violating OKLA. STAT. tit. 63, § 2-401(G) and OKLA. STAT. tit. 63, § 2-402(A), after previously being convicted of committing two or more felonies, including one prior conviction for felony possession of a controlled substance. Dkt. 12-4, Tr. Trial vol. 2, at 113-15; Dkt. 12-6, O.R., at 7-8, 144. These circumstances exposed him to sentencing under Oklahoma's Habitual Offender Act. *See* OKLA. STAT. tit. 63, § 2-401(F) (providing for punishment under OKLA. STAT. tit. 21, § 51.1 upon conviction for violation of § 2-401(G) when offense occurs within 2,000 feet of a school); *see also Jones v. State*, 789 P.2d 245, 247 (Okla. Crim. App. 1990) (stating, "where an appellant is charged with both drug and non-drug

predicate offenses, it is permissible to provide for enhancement under either" the Habitual Offender Act or the Uniform Controlled Dangerous Substances Act). The State requested sentencing under the Habitual Offender Act and, because "§ 51.1(B) does not prescribe a fine, the fine provision of [OKLA. STAT. tit. 21,] § 64 [was therefore] applicable." *Fite v. State*, 873 P.2d 293, 295 (Okla. Crim. App. 1993). Section 64(B) provides, in relevant part, that "[u]pon conviction for any felony punishable by imprisonment in jail or prison, in relation to which no fine is prescribed by law, the court or a jury may impose a fine on the offender not exceeding Ten Thousand Dollars ($10,000.00) in addition to the imprisonment prescribed."

The trial court imposed a 30-year prison term and $10,000 fine for Count 1. Dkt. 12-6, O.R., at 144-45. Both the sentence and the fine were authorized by state law. *See* OKLA. STAT. tit. 21, § 51.1(B) (providing for prison sentence of 20 years to life); OKLA. STAT. tit. 21, § 64 (providing for fine not exceeding $10,000); *Fite*, 873 P.2d at 295 (explaining that § 64 applies when sentence is imposed under § 51.1(B) because the latter provision does not provide for a fine). The trial court imposed a 6-year prison term and $1,000 fine for Count 2. Dkt. 12-6, O.R., at 144-45. Again, both the sentence and the fine were authorized by state law. *See* OKLA. STAT. tit. 21, § 51.1(C) (providing for "term in range of three times the minimum term for a first-time offender to life imprisonment" but not providing for a fine); OKLA. STAT. tit. 63, § 2-402(B)(1) (providing that a first-time offender who violates § 2-402(A) is subject to a sentencing range of two to ten years imprisonment); OKLA. STAT. tit. 21, § 64; *Fite*, 873 P.2d at 295.

Because Petitioner's sentences and fines are authorized by state law, the OCCA reasonably determined that appellate counsel did not perform deficiently by failing to raise the unauthorized-fine claim on direct appeal.

### c. Sufficiency of the Evidence Claim (Ground Six)

In Ground Six, Petitioner claims the State violated his Fourteenth Amendment right to due process by failing to prove every essential element necessary to convict Petitioner of manufacturing methamphetamine within 2,000 feet of a school, as prohibited by OKLA. STAT. tit. 63, § 2-401(G), (F). Dkt. 1, Petition, at 16-17. The crux of Petitioner's complaint is that the State failed to present sufficient evidence to establish the distance between Petitioner's apartment and the nearby college. *Id.*

> Applying *Strickland* the state district court found this claim lacked merit. It stated,
>
> Sufficient evidence was provided to prove the crimes took place within 2000 feet of a NEO college. While differing measurements were given, all the testimony established the distance at less than 1100 feet, well within the 2000 feet distance the State was required to prove.

Dkt. 11-7, DC Order, at 4 (footnote omitted). The OCCA agreed. Dkt. 11-9, OCCA Order, at 4.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319; *see also Coleman v. Johnson*, 566 U.S. 650, 656 (2012) ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that *Jackson* "standard requires [reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason"). In applying the *Jackson* standard on federal habeas review, the Court looks to state law to determine the substantive elements of the crime. *Johnson*, 566 U.S. at 655. "[B]ut the minimum amount of

evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Id.*

To obtain Petitioner's conviction, the State had to prove, beyond a reasonable doubt, that Petitioner (1) knowingly (2) manufactured (3) methamphetamine (4) within 2,000 feet of Northeastern Oklahoma A&M College, in Miami, Oklahoma. Dkt. 12-6, O.R., at 122 (amended information); Okla. Stat. tit. 63, § 2-401(G), (F); Okla. Unif. Jury Instr. (OUJI)-CR 6-3 & 6-5. As discussed, Petitioner challenges the State's evidence only as to the fourth element.

Having reviewed the trial transcripts, the Court finds it was more than reasonable for the OCCA to determine Petitioner's sufficiency-of-the-evidence claim lacked merit and did not support his IAAC claim. The record reflects that Petitioner rented an upstairs apartment in a commercial building located on the corner of East Central and F Street in Miami, Oklahoma. Dkt. 12-3, Tr. Trial vol. 1, at 17-22, 35-36, 52-56. The building had multiple entrances and there was considerable evidence admitted at trial (and oral argument presented to the trial court) regarding Petitioner's specific street address. *Id.*; Dkt. 12-4, Tr. Trial vol. 2, at 117-18. In the original information, the State identified Petitioner's address as 520 F Street SE. Dkt. 12-6, O.R., at 5. In the amended information, the State identified Petitioner's address as 510 East Central. *Id.* at 122. But regardless of any confusion surrounding the specific address of Petitioner's apartment, the State presented evidence that Detective Morris measured the distance between Petitioner's apartment and the grounds of NEO A&M College with resulting measurements ranging from 997 feet to 1,029 feet. Dkt. 12-3, Tr. Trial vol. 1, at 32-34. On this record, there was nothing objectively unreasonable about the OCCA's determinations (1) that any rational factfinder could find that the State proved every essential element of the crime charged and (2) that appellate counsel was thus not ineffective for failing to raise a sufficiency-of-the-evidence claim.

#### d.  Confrontation Claim (Ground Eight)

Finally, in Ground Eight, Petitioner claims the trial court violated his Sixth Amendment right to confront the witnesses against him, as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004), when the trial court refused defense counsel's request to disclose the identity of the individual who told Detective Morris that Petitioner was manufacturing methamphetamine.  Dkt. 1, Petition, at 19-21.[19]

After finding Petitioner's confrontation claim was procedurally barred, the state district court briefly addressed the merits of this claim outside the *Strickland* framework and rejected it on state-law grounds.  Dkt. 11-7, DC Order, at 4.  The court stated, "The confidential informant referred to in this case was not a witness to the crimes filed and thus was not a material witness requiring disclosure."  *Id.* (citing OKLA. STAT. tit. 12, § 2510 and two OCCA decisions).  The OCCA found this claim procedurally barred, but presumably addressed the federal claim that was clearly presented in Petitioner's supplemental application for postconviction relief and postconviction appellate brief when it implicitly rejected his argument that appellate counsel was ineffective for failing to raise the confrontation claim.  *See Tara Williams*, 568 U.S. at 301; *Smith*, 824 F.3d at 1242 n.6.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  To protect a defendant's constitutional confrontation rights,

---

[19] As he did in state court, Petitioner appears to rest his "confrontation" claim on a blend of state law and federal law relating to (1) the admission of accomplice testimony, (2) statutory witness disclosure requirements, (3) the admission of statements from confidential informants, and (4) the Sixth Amendment right to confrontation as interpreted in *Crawford*. Dkt. 1, Petition, at 19-21; Dkt. 24, Reply Br., at 62; Dkt. 4, App'x vol. 3, at 51-55 (supplemental application for post-conviction relief).

testimonial hearsay is inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68.

To the extent the Court understands Petitioner's argument, it does not appear that the trial court admitted any "testimonial" statements from the individual Petitioner refers to as "Tipster." Dkt. 1, Petition, at 20. At Petitioner's non-jury trial, Detective Morris testified, on direct examination, that he "received information . . . in June . . . that [Petitioner] was manufacturing or cooking using the one pot method at the location there at F and Central in an apartment there." Dkt. 12-3, Tr. Trial. vol. 1, at 18. Morris further testified that he received that information from "a person" who "described to [Morris] what would—what [Morris] would consider a one pot method using a plastic bottle" and who "strongly did not want his name mentioned." *Id.* at 18-19. Morris then testified that, based on the information he received, he searched state court records for further information about Petitioner, learned Petitioner was on parole, and contacted the local probation and parole office. *Id.* at 19.

On cross-examination, defense counsel elicited testimony from Morris that the person who provided the tip was not someone Morris considered a "confidential informant," questioned Morris about the "reliability" and "credibility" of that person, and asked Morris to reveal that person's identity. *Id.* at 43-45. The State objected, and the trial court denied defense counsel's request for disclosure of the person's name. *Id.* at 45. The following colloquy then occurred between defense counsel and Morris:

> Q. [by counsel] I think you testified that this person told you, Officer, that [Petitioner] was using the one pot method of making methamphetamine; is that right?
>
> A. This person described ingredients in a bottle with [Petitioner] shaking the bottle.
>
> Q. All right. Was—and that was the sum and substance of what they told you; is that right?

A.    I'm sorry?

Q.    And that was the sum and substance of what they told you?

A.    They basically stated that they kind of thought he knew what he was doing, and this person thought that they were manufacturing methamphetamine and therefore wanted to get out of that situation and wanted to report it to the police.

Q.    All right.  And that was—that was the –that was the tip you received?

A.    Yes, sir.

Dkt. 12-3, Tr. Trial. vol. 1, at 46.  Defense counsel later inquired whether the individual "voluntarily" provided the information to Morris.  *Id.* at 51.  Morris responded that he did not recall "why" the individual provided the information and stated, "To the best of my recollection this person wanted to advise of the drug activity that was going on at this apartment."  *Id.*

Petitioner contends that his right to confrontation was violated because "The only witness attesting to Petitioner manufacturing methamphetamine was Tipster, who the trial Court refused to allow [Petitioner] to confront."  Dkt. 1, Petition, at 20 (boldface type and underline omitted).  If this is Petitioner's argument, Petitioner fails to show how the facts of this case establish a *Crawford* violation.  As stated, *Crawford* held that testimonial hearsay is inadmissible at trial unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant.  541 U.S. at 68.

Petitioner does not clearly identify which part of Detective Morris's testimony Petitioner believes qualifies as inadmissible "testimonial" hearsay under *Crawford*. Dkt. 1, Petition, at 20-21; *see also* Dkt. 24, Reply Br., at 62 (asserting "the State introduced a non-testifying 'accomplices' non-custodial statement implicating him in the charged offense").  Indeed, Morris's testimony on direct examination regarding the information received does not even appear to be hearsay.  Rather, it appears to have been offered to explain why Morris began investigating

Petitioner's alleged drug activity rather than to prove that Petitioner actually used a plastic bottle to manufacture methamphetamine. *See, e.g.*, *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) (unpublished)[20] (noting that "testimony not offered to prove the matter asserted that is 'offered instead for *relevant* context or background' is not hearsay" (quoting *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009))). If Morris's testimony was not hearsay, it necessarily is not "testimonial" hearsay. *Id.* However, even assuming some or all of Morris's testimony was admitted in violation of the Confrontation Clause, the OCCA nevertheless would have had a reasonable basis for rejecting Petitioner's confrontation claim. *See Richter*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). As the Tenth Circuit explained in *Becknell*, Confrontation Clause errors are subject to a constitutional harmless-error analysis. 601 F. App'x at 713. That analysis requires the reviewing court "[t]o determine whether such an error actually contributed to the guilty verdict" and, to that end, the reviewing court must consider "the context in which the statement was admitted, how it was used at trial, and how it compares to the properly admitted evidence." *Id.* (quoting *United States v. Chavez*, 481 F.3d 1274, 1277 (10th Cir. 2007)).

Here, Morris testified, near the beginning of Petitioner's two-day non-jury trial, that he received information from an individual that Petitioner might be cooking methamphetamine using a "one pot" method by placing ingredients in a plastic bottle and shaking it. Dkt. 12-3, Tr. Trial vol. 1, at 18-19, 46. After Morris briefly testified about the actions he took to follow up on that information, Morris and other law enforcement officers testified at length about the search of

---

[20] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Petitioner's apartment and the items recovered during that search.  *See generally*, Dkts. 12-3, 12-4 (trial transcripts).  The OCCA's description of those items, as drawn from the trial transcripts, bears repeating.  Specifically, in Petitioner's bedroom, law enforcement officers found

> marijuana, baggies, small plastic containers containing methamphetamine residue, syringes, pills, a scale, a glass lid with white powder residue, a razor blade, and a plastic bag containing leftover "mush" from cooking methamphetamine.  In the kitchen, police found lighter fluid and drain opener, chemicals commonly used to manufacture methamphetamine.

Dkt. 11-4, OCCA Op., at 2.  And in a locked closet in Petitioner's apartment, officers found

> more lighter fluid, bottles containing two-layer liquids, a large container of lye, two jugs of muriatic acid, hoses, and several empty boxes of pseudoephedrine pills.  In the refrigerator of an unoccupied apartment accessible from a door in [Petitioner's] kitchen, police found a bag containing five reaction vessels recently used for manufacturing methamphetamine.

*Id.* at 3 (footnote omitted).  Notably, "[o]ne of the reaction vessels was made from a distinctive Ocean Spray Cranberry jug, exactly like a bottle of juice found in [Petitioner's] apartment.  Other reaction vessels were made from water bottles of the same type and brand found in [Petitioner's] apartment."  Dkt. 11-4, OCCA Op., at 3 n.3.

On this record, the OCCA had more than a reasonable basis to determine that appellate counsel was not ineffective for failing to raise a federal confrontation claim on direct appeal.

### e.  Conclusion

Based on the foregoing analysis, Petitioner cannot demonstrate that the OCCA's application of *Strickland* to deny relief on his IAAC claim was objectively unreasonable.  Thus, § 2254(d) precludes relief on his Ground Three claim.  Because the foregoing analysis also reveals that the substantive claims Petitioner asserts in Grounds Two, Five, Six and Eight lack merit, the Court also denies habeas relief as to those four claims.

### B. Procedurally defaulted claims (Grounds Four and Seven)

#### 1. Unauthorized Penalty Claim (Ground Four)

In Ground Four, Petitioner alleges the trial court erred by imposing a one-year period of post-imprisonment supervision because (1) he was convicted for crimes he committed on July 12, 2012, and (2) the law mandating post-imprisonment supervision, OKLA. STAT. tit. 22, § 991a-21, was not enacted until November 1, 2012.[21] Dkt. 1, Petition, at 12. Thus, he argues, the trial court's retroactive application of this state law violated the Ex Post Facto clause of the United States Constitution by subjecting Petitioner to a greater punishment than the punishment in existence when he committed his crimes. *Id.*

Petitioner first presented this claim in his application for postconviction relief. Dkt. 3, App'x vol. 2, at 59-60. The state district court imposed a procedural bar because Petitioner failed to raise this claim on direct appeal. Dkt. 11-7, DC Order, at 1-2. The court nevertheless briefly addressed the claim and, relying solely on state law, concluded, "The statute mandating post-imprisonment supervision by its plain language applies to all defendants sentenced after November 1, 2012. Proposition 3 is denied." *Id.* at 4. On postconviction appeal, Petitioner accepted that the law's plain language supported imposition of post-imprisonment supervision but argued, correctly,

---

[21] OKLA. STAT. tit. 22, § 991a-21(A) provides:

For persons convicted and sentenced on or after November 1, 2012, the court shall include in the sentence of any person who is convicted of a felony and sentenced to a term of confinement with the Department of Corrections, as provided in Section 991a of Title 22 of the Oklahoma Statutes or any other provision of the Oklahoma Statutes, a term of post-imprisonment supervision. The post-imprisonment supervision shall be for a period of not less than nine (9) months nor more than one (1) year following confinement of the person and shall be served under conditions prescribed by the Department of Corrections. In no event shall the post-imprisonment supervision be a reason to reduce the term of confinement for a person.

that the state district court did "not address [his] Constitutional argument." Dkt. 11-8, Pet'r PC App. Br., at 11. However, in attempting to overcome the state district court's application of a procedural bar, Petitioner argued only that the trial court's constitutional error in retroactively applying the state sentencing law was so obvious that the state district court should not have imposed a procedural bar. *Id.* at 13. The OCCA necessarily rejected Petitioner's argument when it agreed that the unauthorized-penalty claim was procedurally barred. Dkt. 11-9, OCCA Order, at 2.

For two reasons, the Court finds Petitioner has not made the necessary showings to overcome the procedural default of this claim. First, Petitioner does not argue, either in his habeas petition or in his reply brief, (as he did with all other claims) that appellate counsel's ineffectiveness should excuse the procedural default of his unauthorized-penalty claim. *See* Dkt. 1, Petition, at 12-13 (discussing merits of claim); Dkt. 24, Reply Br., at 42-43 (reasserting that the sentencing error alleged in Ground Four obviously requires correction; adding that his case "presents an 'appropriate circumstance' supporting this Court's bypass of the Oklahoma procedural bar argument because this sentencing error implicates a violation of his Constitutional protections"). Second, Petitioner's mere allegation that a constitutional violation occurred does not establish cause, let alone cause and prejudice, that would excuse the procedural default. *See Coleman*, 501 U.S. at 750. The Court therefore denies habeas relief as to Ground Four on the basis that Petitioner procedurally defaulted that claim in state court and has not established cause to overcome the default.

## 2. Ineffective Assistance of Trial Counsel Claim (Ground Seven)

In Ground Seven, Petitioner asserts he was denied his Sixth Amendment right to the effective assistance of trial counsel. Dkt. 1, Petition, at 18. He incorporates by reference the claim

he presented in state court which generally alleged trial counsel failed to investigate his case, failed to pursue viable defenses, and failed to adequately prepare for trial. *See* Dkt. 3, App'x vol. 2, at 70-85 (Petitioner's application for postconviction relief).

Petitioner first raised this claim in his application for postconviction relief. *Id.* Though not clear, it appears the state district court rejected the claim on the alternative grounds that the claim was procedurally barred and that it lacked merit. Dkt. 11-7, DC Order, at 4. On postconviction appeal, Petitioner asserted that the state district court "fail[ed] to enter a findings of fact and conclusions of law as to this claim" and urged the OCCA to review his ineffective-assistance-of-trial-counsel (IATC) claim de novo. Dkt. 11-8, Pet'r PC App. Br., at 20. Petitioner did not assert, either in his application for postconviction relief or in his postconviction appellate brief, that appellate counsel was ineffective for failing to raise this claim on direct appeal. *See id.*; Dkt. 3, App'x vol. 2, at 70-85 (Petitioner's application for postconviction relief). The OCCA found the IATC claim procedurally barred based on Petitioner's failure to raise it on direct appeal. *See* Dkt. 11-9, OCCA Order, at 2 ("Any allegations as to trial counsel's ineffectiveness have been waived.").

As he did in his postconviction appellate brief, Petitioner urges this Court to review his IATC claim de novo and grant relief. Dkt. 1, Petition, at 18. In his reply brief, Petitioner asserts, for the first time, that appellate counsel was ineffective for failing to raise the IATC claim on direct appeal. Dkt. 24, at 94. But because it is clear from the state court record that Petitioner did not allege in state court that appellate counsel was ineffective for failing to raise the IATC claim, he cannot rely on appellate counsel's alleged failure to raise the IATC claim as "cause" to overcome the procedural default of that claim for purposes of habeas review. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (explaining that a habeas petitioner cannot establish the requisite "cause"

to overcome the procedural default of a federal claim by relying on appellate counsel's alleged failure to present the claim unless the petitioner demonstrates (1) that he exhausted that claim in state court and (2) that appellate counsel's performance was "so ineffective" that it deprived him of his constitutional right to counsel). The Court therefore denies habeas relief on Ground Seven on the basis of the procedural default and Petitioner's failure to overcome it.

## CONCLUSION

Because Petitioner has not demonstrated any grounds on which this Court could grant his request for federal habeas relief, the Court denies his petition for writ of habeas corpus. And, to the extent Petitioner renews his requests for an evidentiary hearing and appointment of counsel, the Court denies those requests as moot.

### Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies habeas relief by rejecting the merits of a petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if the district court denies habeas relief on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Court concludes that reasonable jurists would not debate the correctness of either the Court's assessment of Petitioner's constitutional claims, as asserted in Grounds One, Two, Three, Five, Six and Eight, or the Court's determination that Petitioner procedurally defaulted the constitutional claims asserted in Grounds Four and Seven. The Court therefore declines to issue a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.   The Clerk of Court shall note the substitution of Carl Bear in place of Jason Bryant as party respondent.

2.   The petition for a writ of habeas corpus (Dkt. 1) is **denied**.

3.   Petitioner's requests for an evidentiary hearing and for appointment of counsel are **denied**.

4.   A certificate of appealability is **denied**.

5.   A separate Judgment shall be entered in this case.

**DATED** this 23rd day of September 2019.

TERENCE C. KERN
United States District Judge